# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: REFCO, INC., et al., | ) | |
| | ) | |
| **Debtors.** | ) | |
| --------------------------------------------------------------- | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS, | ) | |
| | ) | |
| **Appellee,** | ) | |
| | ) | |
| vs. | ) | **Case No. 06 C 5529** |
| | ) | |
| TONE GRANT, | ) | |
| | ) | |
| **Appellant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tone Grant has appealed from the bankruptcy court's enforcement of a subpoena issued

to him seeking production of records in connection with bankruptcy proceedings involving

Refco Inc. For the reasons stated below, the Court affirms the decision of the bankruptcy court,

with one slight modification.

### Background

This appeal arises from a Chapter 11 bankruptcy filing by Refco Inc. and its subsidiaries

in the United States Bankruptcy Court for the Southern District of New York. The Official

Committee of Unsecured Creditors of Refco and the affiliated debtors ("Committee") sought to

obtain discovery from Tone Grant pursuant to Federal Rule of Bankruptcy Procedure 2004, to

investigate the possibility of bringing claims against Grant and others.

Grant was the CEO of a predecessor of Refco until September 1998. After his departure, Grant remained a major shareholder (47.5%) of Refco's holding company, Refco Group Holdings, Inc. ("RGHI"), until he sold all his stock to another part owner, Phillip Bennett, in August 2004. In October 2005, shortly after an initial public offering of stock by Refco, the company announced that Bennett, its chairman and chief executive officer, had engaged in previously undisclosed transactions with RGHI involving over $400 million in Refco receivables. Bennett paid Refco the full amount due on the receivables, but Refco's announcement and Bennett's subsequent indictment were followed by a rapid decline in Refco's stock price. The company filed for bankruptcy later in October 2005.

In November 2005, the Committee obtained permission from the bankruptcy court for an order under Rule 2004 directing certain persons and entities, including Grant, to produce records. The Committee first served Grant, who lives in Illinois, with a subpoena issued by the bankruptcy court in New York. Grant objected on the ground that a subpoena issued by a federal court in New York was ineffective in Illinois. As a result, the Committee withdrew the first subpoena and caused a subpoena to be issued on a form obtained from the United States District Court for the Northern District of Illinois. This subpoena bore the case name and number of the Refco bankruptcy case in New York and was, by agreement with Grant, directed to Grant's counsel in Chicago. Attached to the subpoena was a list of twenty-seven categories of documents that Grant was directed to produce at the offices of counsel for Refco in Chicago in late February 2006. In summary, the Committee sought production of documents relating to Grant's dealings and transactions with Refco, RGHI, and other affiliated entities; Refco's accounting policies; the initial public offering of Refco stock; dealings between Refco and RGHI

2

and other affiliated entities; Refco's financial statements and SEC filings; and two rather broad

categories seeking "[a]ll documents concerning Refco, RGHI and/or Liberty Corner" and "[a]ll

documents concerning Phillip Bennett, Gerald M. Sherer, and/or Santo Maggio."

About two weeks before the return date listed on the subpoena, Grant served Refco's

counsel with a written response and objections. The response indicated that Grant had produced

certain records in January 2006 – a "Refco Equity Purchase and Merger Agreement" and

amendments dated June - July 2004, and a copy of a lawsuit filed against Bennett (and

presumably Grant) in federal court in New York – but was objecting to any further production of

documents. In the response, Grant stated that he had terminated his employment with Refco in

1998 and had no managerial or consulting role in Refco after that; that the documents requested

were not "relevant as to him" or calculated to lead to the discovery of "admissible evidence as to

him"; and that the requested documents were cumulative of those sought by the Committee from

other sources in a less burdensome manner.

The Committee filed a motion in the United States Bankruptcy Court for the Northern

District of Illinois seeking to compel production of the documents it requested. Grant filed

written objections, adding to his earlier objections a contention that the bankruptcy court lacked

the authority to enforce a subpoena issued by the district court (he attached to his objection a

copy of the bankruptcy form for a subpoena for a Rule 2004 examination). Grant also contended

that the subpoena should be limited to the time period from January 2004 through December 5,

2005 and that he should not have to produce privileged or publicly-available documents and that

a protective order barring dissemination of any produced documents should be required.

After briefing and argument, United States Bankruptcy Judge Bruce Black overruled

Grant's argument that the bankruptcy court lacked the authority to enforce the subpoena. He

sustained Grant's objections to two of the categories of documents – the two this Court earlier

characterized as "rather broad" – but overruled his other objections.[1]  Grant then appealed to this

Court.

## Discussion

On appeal, Grant argues that the bankruptcy court lacked jurisdiction to enforce the

subpoena because it was issued by the district court, and that the subpoena was overly broad.

*See* Grant Br. at 2, 4, 6.

**1.     Jurisdiction of the bankruptcy court**

Grant is correct that the Committee used the wrong form for the subpoena that it served

on him; it should have used the standard bankruptcy court form for Rule 2004 examination

subpoenas.  But though the Court is rather mystified as to why the Committee made this misstep,

it did not affect the bankruptcy court's authority to enforce the subpoena.

Under the Bankruptcy Rules, attendance at an examination under Rule 2004 "may be

compelled as provided in [Bankruptcy] Rule 9016," which in turn incorporates Federal Rule of

Civil Procedure 45, which governs subpoenas.  Fed. R. Bankr. P. 2004(c).  Bankruptcy Rule

2004(c) permits an attorney to "issue and sign a subpoena on behalf of the court for the district in

which the examination is to be held," in this case the Northern District of Illinois.  *Id.*

Though Rule 45 requires that a subpoena "state the name of the court from which it is

issued," Fed. R. Civ. P. 45(a)(1)(A), the subpoena issued to Grant, technically speaking,

---

[1]  The Court notes that the bankruptcy court in New York had previously entered a
protective order governing documents produced in Rule 2004 examinations conducted in the
Refco bankruptcy case.

complied with that requirement. It is the district court, not the bankruptcy court, that has original

jurisdiction of all bankruptcy cases. Following the Supreme Court's decision in *Northern*

*Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982), Congress enacted the

Bankruptcy Amendments and Federal Judgeship Act of 1984, which included provisions giving

the district courts original jurisdiction over all bankruptcy cases, but allowing district courts to

automatically "refer" bankruptcy cases to the bankruptcy judges of the district. *See* 28 U.S.C. §

1334(b); 28 U.S.C. § 157(a). *See generally Matter of Vicars Ins. Agency, Inc.,* 96 F.3d 949, 951

(7th Cir. 1996). In this District, "any and all proceedings arising under Title 11 U.S.C. or arising

in or related to any case under Title 11 U.S.C. are referred to the bankruptcy judges of this

District." N.D. Ill. Internal Oper. Proc. 15(a).

In short, the matter that Judge Black decided *was* a district court matter, albeit one that

the court referred to a bankruptcy judge. Under the law, bankruptcy judges "constitute a unit of

the district court" in each judicial district. 28 U.S.C. § 151. Though the Committee's use of a

bankruptcy court subpoena form would have saved a great deal of time, expense, and effort, its

use of a subpoena form from this Court did not prevent Judge Black – part of "a unit of the

district court" who had the matter on referral from this Court – from enforcing a subpoena issued

under the name of this Court.[2]

**2.      Scope of the subpoena**

The purpose of Rule 2004 is to permit a trustee or, in this case, a creditor's committee, to

discover assets of the debtor that may be recovered and investigate possible causes of action that

---

[2] For the same reasons, the fact that the subpoena was issued under this Court's name did not render it ineffective or invalid.

may be asserted for the benefit of creditors. *See, e.g., In re Handy Andy Home Improvement Centers, Inc.,* 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996); *In re Wilcher,* 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). To that end, the scope of permissible inquiry is very broad – broader than is permitted in civil cases under the Federal Rules of Civil Procedure. *In re Wilcher,* 56 B.R. at 433. The persons who may be examined include persons and entities who, like Grant, had dealings with the debtor. *Id.*

On the other hand, "[a]lthough the scope of the examination permitted under Bankruptcy Rule 2004 is broad it is not without limits. The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper." *Id.* A court may "limit, condition or even forbid the use of Rule 2004" when it is used to "abuse or harass[ ]." *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984). On appeal, a bankruptcy judge's discovery rulings are reviewed for abuse of discretion. *See Grabill Corp. v. Pelliccioni,* 135 B.R. 835, 840 (N.D. Ill. 1991).

Grant objected to the Committee's requests *en masse,* essentially leaving it to the bankruptcy court to determine whether the requests sought information within the proper scope of Rule 2004. Judge Black did not abuse his discretion by enforcing requests two through twenty-five and twenty-seven. Based on the record presented to this Court, each of those requests sought information regarding the debtor and Grant's dealings with the debtor and affiliated entities. The Committee had a legitimate basis to seek this information. Specifically, there is evidence indicating that at least as far back as the year 2000, RGHI – of which Grant was a 47.5% owner 2004 – received significant transfers of assets from Refco that are, at a minimum, subject to question and that may have played a significant role in Refco's downfall. Though the

Court makes no judgment regarding the propriety of those transfers or Grant's role, if any, in any inappropriate activity, the Committee is entitled to seek and obtain information that may shed light on Grant's role in any potentially improper actions or transfers of assets involving Refco and its affiliates.

It is no answer that the Committee has sought or could seek the same information elsewhere. It is commonplace in discovery to ask opposing parties, witnesses, and others for the information they have, even if others have the same information. It is appropriate to do so, within reasonable limits, to (among other things) learn the involvement of the particular party or witness and the information available to him, seek information that others may no longer have or may have forgotten, or to obtain corroborating evidence. Grant has not shown that Judge Black abused his discretion in enforcing the Committee's requests even though it may have made the same or similar requests to others.

The Court also rejects Grant's challenge to the bankruptcy court's refusal to limit the time period covered by the subpoena to the period after January 2004. The record establishes a sufficient basis to seek records going back to the year 2000 – specifically, that the allegedly questionable transfers between Refco and RGHI went back at least that far.

Grant objects to producing his income tax returns to the extent they are covered by request two, which seeks documents "concerning any compensation or payments of any kind" that Grant or a family member received from Refco or other specified persons and entities. Grant's privacy interest in those documents is insufficient to overcome the Committee's demonstrated need to obtain records regarding transfers that Grant (or family members) may have received. But to the extent income tax returns are within the scope of this requests or

7

others in the subpoena, Grant may redact the responsive tax returns, producing only those parts of the returns reflecting the information sought in the subpoena. The Court is unpersuaded, at least at this point, that the Committee has a legitimate need or entitlement to see records regarding other unrelated income that Grant or family members may have received.

Finally, as the Committee points out, if any of the material in Grant's possession or control sought by the subpoena is subject to a claim of privilege, the appropriate way to assert that is by way of a particularized objection supported by a privilege log. *See* Fed. R. Civ. P. 45(d)(2); Fed. R. Bankr. P. 9016 (incorporating Fed. R. Civ. P. 45).

## Conclusion

For the reasons stated above, the Court affirms, with one modification, the order of the Bankruptcy Court. Grant is directed to produce all documents responsive to requests two through twenty-five and twenty-seven of the subpoena on or before February 6, 2007. Any income tax returns responsive to these requests may be produced in redacted form as specified in the body of this decision. The Clerk is directed to enter judgment affirming, as modified, the decision of the Bankruptcy Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 16, 2007